# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CRYSTAL G. JACOBS, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    Case No. CIV-16-611-CG ) |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration,[1] | ) ) ) ) ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Crystal G. Jacobs brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 8, hereinafter "R. _"), and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

### PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed her SSI application on May 21, 2012, alleging disability due to several physical conditions. R. 198, 241, 245. Following denial of her application

---

[1] The Current Acting Commissioner is substituted as Defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g).

initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on September 3, 2014. R. 7-30. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. R. 31, 36-55. The ALJ issued an unfavorable decision on January 12, 2015. R. 10-24.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 21, 2012. R. 12. At step two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, carpal tunnel syndrome by history, and obesity. R. 12-20. At step three, the ALJ found that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 20.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 20-23. The ALJ found:

> [Plaintiff] has the [RFC] to lift and carry 20 pounds occasionally and 10 pounds frequently. [Plaintiff] can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. [She] can occasionally climb, balance, stoop, kneel, crouch, and crawl. [Plaintiff] can frequently handle and finger.

R. 20.

At step four, the ALJ found that Plaintiff's RFC allowed her to perform her past relevant work of Cashier (Box Office Attendant). R. 23. The ALJ therefore concluded that Plaintiff had not been disabled within the meaning of the Social Security Act during the relevant time period. R. 24.

Plaintiff's request for review by the SSA Appeals Council was denied, and the unfavorable determination of the ALJ stands as the Commissioner's final decision. *See* R. 1-4; 20 C.F.R. § 416.1481.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this action, Plaintiff argues that remand is required because (i) the ALJ failed to properly evaluate Plaintiff's cervical-spine impairment and resulting limitations, and (ii)

the ALJ erred in finding that Plaintiff could return to her past relevant work. *See* Pl.'s Br. (Doc. No. 15) at 2-10; Pl.'s Reply (Doc. No. 23) at 1-3.

I.  *Plaintiff's Cervical-Spine Impairment*

Plaintiff first asserts that the ALJ erred at step two by failing to consider Plaintiff's cervical-spine condition and find that such condition was a severe, medically determinable impairment ("MDI"). *See* Pl.'s Br. at 3-8; Pl.'s Reply at 1-2. The undersigned agrees that significant medical evidence in the record indicates that Plaintiff's cervical-spine condition was a MDI pursuant to 20 C.F.R. § 416.921 and was "severe" in nature—i.e., that the condition "significantly limit[ed]" Plaintiff's "ability to do basic work activities," 20 C.F.R. § 416.920(c).

In the course of his regular treatment of Plaintiff's pain and other issues, Harvey Jenkins, PhD, MD, referred Plaintiff for MRI studies of her cervical and lumbar spine. R. 617-19. These studies were performed on July 29, 2014. *See* R. 608 (MRI of lumbar spine), 609 (MRI of cervical spine). With respect to the cervical-spine images, the reviewing physician found: "[m]ild facet degenerative changes" at C3-4 and C4-5, "[m]oderate right C6-7 neural foraminal orifice stenosis," and "[d]isc osteophyte complexes with mild acquired central spinal canal stenosis at C6-7 and C5-6." R. 609. After reviewing both MRIs, Dr. Jenkins determined that Plaintiff "has some degenerative changes present as well as some neuroforaminal stenosis." R. 614. In addition, the record contains clinical findings of reduced motor strength in the biceps and triceps, pain and/or stiffness associated with the cervical spine and shoulders, and a positive Spurling test on the left side. R. 504, 507, 511, 619.

The Commissioner does not dispute that Plaintiff's impairment should have been found to be a severe MDI but argues that the ALJ's error was harmless. *See* Def.'s Br. (Doc. No. 20) at 7. It is true that "a failure to find an impairment medically determinable" may be harmless "if the ALJ consider[s] the non-medically determinable impairment in assessing the RFC." *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016). Similarly, a failure to find a MDI to be severe at step two is usually harmless if the ALJ "finds another impairment is severe and proceeds to the remaining steps of the evaluation," because in so doing the ALJ will be required to consider "all [MDIs], severe or not . . . at those later steps." *Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (emphasis omitted); *see also* 20 C.F.R. §§ 416.923, .945(a)(2). As explained below, although the ALJ found other severe MDIs and proceeded through steps three and four of the sequential evaluation, the ALJ's written decision does not reflect that the ALJ properly considered Plaintiff's cervical-spine impairment and associated limitations at those steps.

First, as noted by Plaintiff, the ALJ failed at step three to specifically evaluate the relevant impairment for purposes of Listing 1.04, which addresses disorders of the spine and spinal cord. *See* R. 20; Pl.'s Br. at 5-6 (citing evidence in the record as allegedly supporting the presence of Listing 1.04(A) factors "nerve root compression characterized by neuro-anatomic distribution of pain," "limitation of motion of the spine," and "motor loss" "accompanied by sensory or reflex loss"); 20 C.F.R. pt. 404, subpart P app. 1, § 1.04(A). In the written decision, the ALJ broadly held that various types of evidence that would have "me[t] the requirements for listed musculoskeletal impairments or neurological impairments" were not present in the record, but the ALJ did not "identify the relevant Listing or Listings"

5

or "discuss the evidence" that *was* present in the record. R. 20; *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). In response, the Commissioner points to evidence in the record that supports the ALJ's step-three finding, but the Commissioner does not specifically dispute that Plaintiff's cited items reasonably implicate consideration of Listing 1.04 and does not adequately explain the ALJ's failure to address that Listing. *See* Def.'s Br. at 7-8. Under these circumstances, the ALJ's "bare conclusion" fails to allow "meaningful judicial review" of the step-three determination. *Clifton*, 79 F.3d at 1009; *see also Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005) ("[T]he district court may not create post-hoc rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision itself.").

Second, in determining Plaintiff's RFC, the ALJ relied on the lack of a relevant MDI to reject alleged physical limitations that are consistent with a cervical-spine MDI. *See* R. 20, 23. Thus, in this instance the ALJ's error at step two is not resolved by the subsequent RFC assessment, but fatally undermines it. In the written decision, the ALJ discussed much of the medical evidence in the record, including a report of a consultative medical examination performed by John Saidi, MD, on November 20, 2013. *See* R. 13-14, 17, 18, 20, 13 (citing R. 502-11 (Ex. 15F)). Relevant here, Dr. Saidi found that Plaintiff had a normal range of motion for her shoulders but with associated pain and stiffness, a "stiff" range of motion for her cervical spine, pain and stiffness associated with her shoulder joints, and 4/5 motor strength in her biceps and triceps. R. 504, 507, 511. Dr. Saidi opined that Plaintiff could reach overhead, handle, or push/pull only "[o]ccasionally" (up to ⅓ of the time) and could reach (otherwise), finger, and feel "[f]requently" (⅓ to ⅔ of the time). R. 504.

The ALJ gave "some weight" to Dr. Saidi's medical opinion, concurring with many of the limitations imposed by the physician. R. 23. But the ALJ's RFC omitted any limitations on reaching, feeling, or pushing/pulling, stating:

> [T]he record shows no medically determinable impairments related to shoulders or overhead reaching limitations. The [ALJ] notes in 2013, the claimant had unremarkable CT scans of cervical, lumbar, thoracic spine, and head (Exhibit 10F).

R. 23; *see* R. 20. Because the ALJ's primary rationale for rejecting the limitations on reaching—"no medically determinable impairments"—relies on a finding that is not reasonably supported by the record that was before the ALJ in January 2015, the ALJ's evaluation of Dr. Saidi's opinion in that regard, and resulting RFC determination, is not supported by substantial evidence.

Further, although the ALJ's RFC determination discusses in detail Plaintiff's lumbar-spine MRI of July 29, 2014, the ALJ fails entirely to mention that Plaintiff also had a cervical-spine MRI performed on that same date or to discuss this latter MRI. *See* R. 15, 23. The ALJ also mistakenly characterizes Dr. Jenkins' assessment of both MRI studies as an assessment of only the lumbar-spine study. R. 15 (citing R. 614). This omission and error undermine the RFC determination, because the ALJ may not properly "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004); *see also Clifton*, 79 F.3d at 1009, 1010 (explaining that the "record must demonstrate that the ALJ considered all of the evidence" and that "in addition to discussing the evidence supporting his decision, the ALJ

also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects").

For all of these reasons, the ALJ's errors at step two, step three, and in the RFC determination require remand.

## II. *Plaintiff's Ability to Perform Past Relevant Work*

The ALJ's deficient RFC additionally undermines his step-four conclusion that Plaintiff was not disabled because she could return to her prior work as a box-office cashier as it is actually and generally performed. *See* R. 23. As noted above, Dr. Saidi opined that Plaintiff was limited to only occasional (up to ⅓) or frequent (⅓ to ⅔) types of reaching, R. 504, and the ALJ's rejection of these limitations is premised upon a finding that is not supported by substantial evidence in the record. The *Dictionary of Occupational Titles* ("DOT") states, however, that the occupation of box-office cashier requires "[c]onstant[]" reaching—i.e., that activity occurs two-thirds or more of the time. *See* DOT (4th rev. ed. 1991) 211.467-030 (Ticket Seller), 1991 WL 671853. Thus, if Dr. Saidi's limitations on reaching were accepted, Plaintiff would not be able to perform her past relevant work.

Moreover, the ALJ's step-four conclusion is otherwise unsupported by substantial evidence and based on legal error. At the administrative hearing, the ALJ asked the VE whether an individual who could perform light work but only "frequently handle and finger" would be able to perform a box-office cashier job, and the VE answered yes. R. 53-54. The ALJ relied on that testimony in determining that Plaintiff can return to her prior work as a box-office cashier. R. 23. The VE, however, did not note the discrepancy between the abilities of the hypothetical and those in the DOT description for box-office

8

cashier, the latter of which requires not just frequent but "[c]onstant[]" handling and fingering. *See* R. 53, 54; DOT 211.467-030, 1991 WL 671853.

Before relying upon a VE's testimony "to support a disability . . . decision, [ALJs] must . . . [i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the [DOT] . . . and [e]xplain in the . . . decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000). Here, the ALJ failed to either "identify" or "explain" the direct conflict between the DOT and the VE's evidence, and he relied solely upon that latter evidence in finding that Plaintiff could return to her past relevant work. *See* R. 23, 54.

The Commissioner does not dispute the discrepancy but argues that the ALJ did not err because no conflict was "apparent"—i.e., specifically raised to the ALJ's attention during the administrative hearing. *See* Def.'s Br. at 10-11. This response misapprehends how the term "apparent" is used in the relevant Ruling and improperly conflates the ALJ's duty "to ask" the VE about possible conflicts with the ALJ's duty to *resolve* all conflicts in the final disability decision.

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE . . . evidence to support a . . . decision that the individual is or is not disabled. The [ALJ] will explain in the . . . decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict *irrespective of how the conflict was identified*.

SSR 00-4p, 2000 WL 1898704, at *4 (emphasis added); *see also id.* at *2.

9

Because the ALJ failed to "investigate and elicit a reasonable explanation" for the conflict between the DOT and the VE's testimony, or to resolve this conflict in the written decision, the VE's testimony cannot stand as "substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see* R. 23; *cf. Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991) ("Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." (alteration and internal quotation marks omitted)). Remand is required.

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 30th day of June, 2017.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE